No. 99-652

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 48N

STATE OF MONTANA

Plaintiff and Respondent,

v.

TY BRADFORD,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender Office, Helena, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Mark W. Mattioli, Assistant Montana Attorney General, Helena, Montana; Marty Lambert, Gallatin County Attorney, Gary Galaz, Deputy Gallatin County Attorney, Bozeman, Montana

Submitted on Briefs: February 16, 2001
Decided: March 20, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Ty Bradford (Bradford) was charged by information in Montana's Eighteenth Judicial District Court, Gallatin County, with three counts of partner or family member assault and two counts of felony assault. He was found not guilty at trial of two counts of partner or family member assault, the jury was unable to reach a verdict on the other partner assault charge, and he was convicted on both counts of felony assault. Following his trial, Bradford wrote a letter to the District Court alleging that the 911 tape used as evidence by the State had somehow been tampered with, and that defense counsel had "dropped the ball." On appeal Bradford contends that this letter should have been construed as a motion for a new trial, and that the court should have conducted an inquiry into the validity of Bradford's negative comments regarding his counsel. We affirm.

¶3 The issues on appeal are:

¶4 1. Whether the letter sent by Bradford to the District Court should be considered a motion for a new trial; and

¶5 2. Whether the District Court was required to inquire further regarding Bradford's complaint about his counsel.

BACKGROUND

¶6 Bradford and his companion Dixie Brown (Brown) had a contentious relationship leading to physical altercations in March of 1999. During the course of the last altercation, Bradford dialed 911, according to his testimony, to show Brown that he was serious about his demand that she vacate the apartment they shared. Bradford hung up the phone before speaking with the 911 operator. The operator then immediately called the number back. Brown answered the phone, and alleged, among other things, that Bradford had threatened

her with a butcher knife in the course of the altercation. Police responded and questioned the two. When asked about the butcher knife, Bradford led police to the sink, where he had placed the knife after also using it to make a sandwich. As a result of the investigation, Bradford was charged with one count of partner assault allegedly committed March 21, 1999; two counts of partner assault allegedly committed the next day (one for allegedly striking Brown and another for allegedly throwing the battery from a television remote control at her); and two counts of felony assault (one in which he first held the butcher knife to Brown's neck and said, "I could kill you real easy," and subsequently, for an incident in which he held the knife to her rib area and said, "I could gut you very easily").

¶7 Bradford made application for court appointed counsel, which was granted. However, he was unhappy with the counsel appointed by the court, and asked the court to appoint new counsel. The court requested that Bradford and his attorney meet, and if after that meeting no resolution could be reached, the court would consider appointing new counsel. A hearing on Bradford's request was held following the meeting, at which time the court was convinced that Bradford and the court appointed counsel were not compatible. The court then appointed new counsel, who proceeded to represent Bradford throughout the proceedings.

¶8 At trial both parties stipulated to the introduction into evidence of the 911 tape, as the operator who participated in both calls had gone on vacation at time of trial. It appears from the record that in the course of making a copy of the 911 tape that a small portion of the beginning of the tape was either garbled or missing.

¶9 On August 3, 1999, the jury found Bradford not guilty on two charges of partner assault, was unable to reach a verdict on the third, but found him guilty of the two felony assault charges for the knife incidents. On August 16, Bradford wrote a letter to the court wherein he claimed that the 911 tape had been tampered with, that his defense counsel had "dropped the ball," and that the private investigator he hired had not been allowed to testify. The court responded in writing to Bradford, stating that it had received his letter and forwarded the letter to all counsel of record, and further advised Bradford that he needed to discuss these matters with his attorney as no action could be taken by the court without a formal filing.

¶10 Bradford appeared at sentencing on September 22, 1999. The court immediately made inquiry regarding Bradford's intent to retain existing counsel and whether or not he was

prepared to proceed with sentencing. Bradford stated that he wanted to proceed with the sentencing, represented by trial counsel. Bradford was sentenced to twenty years in the Montana State Prison (MSP), with ten years suspended, on each count, and designated a persistent felony offender based on prior criminal history in various states.

¶11 Bradford retained different counsel following his sentencing and asserts that the letter to the District Court should have been treated as a motion for a new trial, and that the court erred by not conducting an appropriate inquiry into his complaints about his attorney as contained in the letter. We affirm the District Court's treatment of this matter.

## Issue 1

¶12 **Whether the letter sent by Bradford to the District Court should be considered a motion for a new trial.**

¶13 Section 46-16-702, MCA (1997)[1], states in pertinent part:

> (1) Following a verdict or finding of guilty, the court may grant the defendant a new trial if required in the interest of justice.
>
> (2) The motion for a new trial must be in writing and must specify the grounds for a new trial. . . ..
>
> (3) On hearing the motion for a new trial, if justified by law and the weight of the evidence, the court may:
>
> (a) deny the motion; [or]
>
> (b) grant a new trial; . . ..

¶14 The standard of review for motions for a new trial is whether or not the court abused its discretion. *State v. Cline* (1996), 275 Mont. 46, 51, 909 P.2d 1171, 1174. Section 46-16-702, MCA, makes clear that a motion for a new trial must specify the grounds for a new trial. Upon receipt of the motion, the court may deny the motion if justified by the law and the weight of the evidence. Here, even if we were to agree that Bradford's letter constitutes a motion for a new trial, which we do not, the record unequivocally demonstrates that the District Court considered the weight of the evidence, in particular the concerns over the

911 tape, and concluded that Bradford's concerns were unsubstantiated. In fact, Bradford thoroughly misstates the record in his post-trial letter to the District Court, and, in so doing, appears to attempt to mislead this Court.

¶15 Bradford states in his post-trial letter to the court: "If you recall, you had asked the prosecutor if he was sure that was the tape. He (the prosecutor) stated, 'no, maybe 95% of it.' That was true. The first 5% of the tape was tampered with." His statement does not accurately reflect the colloquy that transpired.

¶16 The record shows that at the time both Bradford and the State stipulated that the 911 tape could be entered into evidence, the prosecutor had not yet heard the actual tape, but Bradford had. The following exchange ensued:

> THE COURT: Is it (the 911 tape) the full time, Mr. Williams?
>
> MR. WILLIAMS (defense counsel): It's the tape that was given to me by the State so in my listening to it, it appears to be the full tape.
>
> . . .
>
> MR. BALAZ (the prosecutor): I had it (the 911 tape) made at Mr. Williams' request and just gave it to him and never listened to it myself. That's what I need to do.
>
> THE COURT: Well, you - I expect that you trust what the 911 operator ordered and gave to you?
>
> MR. BALAZ: *To a 95% degree of certainty.* (Emphasis added).

¶17 In the context of this discussion, there was no indication of nefarious intent by any party to alter the tape to Bradford's disadvantage, contrary to Bradford's statement in his letter to the court following his conviction. At this juncture, the record reflects that Bradford had already listened to the tape, whereas the State had not. The record reveals that the court advised both parties that if there was a problem with the tape after listening to it that "we'll have to deal with it." Neither party took issue with the tape at any point in the proceedings, even when it was later played for the jury.

¶18 At the time the court received Bradford's letter, the court had the full benefit of hindsight, in that all the evidence had been presented at trial and heard by the court. No

new evidence was presented or referenced in any way by Bradford in his letter, and, indeed, he misstates the record in his letter. Under § 46-16-702, MCA, even where a motion for a new trial has been properly made, (and here, it was clearly not) the court is granted the discretion whether or not to order a new trial, based on the law and the weight of the evidence. In the case at bar, the District Court properly weighed the evidence it had heard firsthand throughout the proceedings, and did not abuse its discretion by refusing to order a new trial based on Bradford's letter.

## Issue 2

¶19 **Whether the District Court was required to inquire further regarding Bradford's complaint about his counsel.**

¶20 The standard of review for assessing a court's treatment of concerns regarding the effectiveness of counsel is whether the court abused its discretion. *State v. Gallagher*, 1998 MT 70, ¶ 10, 288 Mont. 180, ¶ 10, 955 P.2d 1371, ¶ 10. In *Gallagher*, this Court concluded that the district court erred in finding that the defendant's complaints regarding counsel were not of a seemingly substantial nature, and we remanded the case for a hearing to determine the validity of the complaints. Bradford would have us do the same here.

¶21 However, remand is not appropriate under the facts of this case. In the instant case, the District Court had the benefit of observing the effectiveness of Bradford's counsel throughout the entire proceedings. In *Gallagher*, there were numerous incidents in the record of personality conflicts between counsel and defendant, and counsel even called the defendant to the stand for the express purpose of testifying before the judge as to the specific complaints Gallagher had with his counsel.

¶22 To the contrary, Bradford had no complaints about his counsel until his unsubstantiated and inaccurate allegations in his post-trial letter. The record unequivocally shows that the court inquired at sentencing about Bradford's concerns with his counsel, and that when expressly asked if he wished to continue with sentencing represented by his trial counsel, Bradford answered in the affirmative. Bradford knew precisely how to effectively express concerns over his counsel, as he had already successfully challenged the appointment of his first court appointed counsel. Moreover, Bradford was actively engaged during the sentencing hearing, asking on several occasions for detailed changes in the Pre-Sentence Investigation report, which were granted by the court.

¶23 The court acted appropriately when it responded to Bradford's letter; forwarded the letter to all counsel of record; and stated that the court would act upon receipt of a formal filing. Bradford chose not to pursue the matter further. The District Court did not abuse its discretion and did not err when it declined to inquire in any greater detail into Bradford's complaints regarding counsel in his post-trial letter.

¶24 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ W. WILLIAM LEAPHART

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

1. The 1997 version of § 46-16-702, (MCA), is applicable to these proceedings. This statute was amended by the 1999 Legislature but the amendments did not become effective until October 1, 1999. *See*, Sec. 1, ch. 301, L.1999.